UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 1:16 CR 5 MR |
| | ) | |
| | ) | **SUPERSEDING** |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| | ) | Violations: 18 U.S.C. § 922(j) |
| (1) JUSTIN NOJAN SULLIVAN | ) | 18 U.S.C. § 924(a)(2) |
| a/k/a "TheMujahid" | ) | 18 U.S.C. § 924(b) |
| | ) | 18 U.S.C. § 1001(a)(2) |
| | ) | 18 U.S.C. § 1958 |
| | ) | 18 U.S.C. § 2332b(a)(1) & (2) |
| | ) | 18 U.S.C. § 2339B(a)(1) |
| | ) | 26 U.S.C. § 5861(d) |
| | ) | |

THE GRAND JURY CHARGES:

## INTRODUCTION

1. JUSTIN NOJAN SULLIVAN ("SULLIVAN"), defendant herein, a national and resident of the United States, was in communication by electronic means from his home in Burke County, within the Western District of North Carolina, with individuals he understood to be member(s) of the Islamic State of Iraq and the Levant ("ISIL"), a designated foreign terrorist organization, in the course of preparing to conduct terrorist attacks in the United States in aid of, and in coordination with, ISIL's calls for violence by its supporters around the world.

### SULLIVAN's Attempt to Provide Material Support to ISIL:

2. On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

3. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq ("AQI") as a foreign terrorist organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "Al-Qaeda in Iraq ("AQI")," this name has frequently been used to describe it through its history. To date, ISIL remains a designated foreign terrorist organization. In an audio recording publicly released on or around June 29, 2014, ISIL announced a formal change of its name to the Islamic State ("IS"). On September 21, 2015, the Secretary added the following aliases to the ISIL listing: Islamic State, ISIL, and ISIS.

4. On or about September 21, 2014, ISIL spokesperson Abu Muhammad al-Adnani called for attacks against citizens—civilian or military—of the United States and other countries participating in the United States-led coalition against ISIL.

5. No later than September 2014, SULLIVAN converted to Islam and began watching violent ISIL acts on the Internet, such as beheadings. SULLIVAN openly expressed support for ISIL in his home and destroyed religious items that belonged to SULLIVAN's parents.

6. On or about December 17 and 18, 2014, SULLIVAN was in possession of a stolen .22 caliber Marlin Model 60W rifle (the ".22 Marlin"). SULLIVAN used the stolen firearm that day to murder his neighbor, 74-year-old John Bailey Clark ("Mr. Clark"), in Mr. Clark's home, a few houses down from SULLIVAN's residence. SULLIVAN hid the stolen firearm, a black ski mask and lock pick kit in a crawl space in the home he shared with his parents.

7. Beginning no later than June 6, 2015, SULLIVAN attempted to provide material support to ISIL by planning terrorist attacks, and discussing such plans with an undercover law enforcement employee ("UCE"), whom SULLIVAN attempted to recruit to join in such attacks. During the course of their conversations, SULLIVAN made clear to the UCE that he was familiar with ISIL's social media efforts to encourage followers to conduct terrorist attacks in the United States. During one such conversation,

SULLIVAN said: "I liked IS from the beginning then I started thinking about death and stuff so I became Muslim."

8. During an electronic communication on or about June 7, 2015, SULLIVAN told the UCE it was better to remain in the United States to support ISIL than to travel, as they would be arrested or killed if they attempted to travel. SULLIVAN suggested the UCE obtain weapons, specifically "an AR-15 .223 with split core ammo…its fragmenting hollow points…deadly." SULLIVAN stated that "u only need 600 dollars akhi for the gun and bullets" and that he would have an AR-15 assault rifle in "[a]bout 2 weeks" by visiting a gun show "close to me." SULLIVAN later stated that the 689 dollars the FBI found in his possession upon his arrest had come from Mr. Clark. A gun show was then scheduled for June 20 through 21, 2015, in Hickory, North Carolina. On or about June 17, 2015, SULLIVAN attempted to purchase hollow point ammunition from a local gun dealer to be used with the weapon(s) he intended to purchase.

9. On June 7, 2015, the UCE asked SULLIVAN: "do you think you can kill," to which SULLIVAN responded, "[y]es." SULLIVAN then urged the UCE to "Just kill a few people so that I know u are truthful…just shoot then leave…wear a mask do it at night." SULLIVAN asked the UCE: "Can u kill?" SULLIVAN added, "I'll kill people this month."

10. Beginning no later than June 9, 2015, Sullivan communicated with Syria-based ISIL member Junaid Hussain ("Hussain"), a/k/a "Abu Hussain Al-Britani," who was the user of the social media account "abuhussain3."

11. SULLIVAN researched how to manufacture firearm silencers on the Internet and then recruited the UCE to manufacture two firearms silencers that would attach to AR-15 rifles to be purchased by SULLIVAN and the UCE. SULLIVAN stated to the UCE: "We'll be using homemade suppressors in and out we'll kill 500 then we'll leave inshallah," and described the suppressors as "not too hard to make."

12. SULLIVAN and the UCE were to use the firearms, silencers and hollow point ammunition to carry out assassinations and mass shootings. When discussing his terrorist plans, SULLIVAN said: "Our attacks needs to be as big as possible…we can do minor assassinations before the big attack for training." SULLIVAN planned to carry out his attack in the following few days at a concert, bar or club where he believed that as many as 1,000 people could be killed using the assault rifle and silencer.

13. On or about June 19, 2015, Sullivan used a social media application to communicate with "abuhussain3." In that communication, Sullivan informed Hussain that Sullivan soon planned to carry out the first operation of the "Islamic State in North America" and discussed making a video of such terrorist attack(s) for later use by ISIL.

### SULLIVAN's Solicitation of an Unregistered Firearm Silencer:

14. The National Firearms Act ("NFA") requires that firearms as defined and listed in Title 26, United States Code, Section 5845(a), be registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in the National Firearms Registration and Transfer Record ("NFRTR").

15. A "firearm" as defined in Title 18, United States Code, Section 921(a)(3)(C) and Title 26, United States Code, Section 5845(a) includes a "firearm silencer." Title 18, United States Code, Section 921(a)(24) defines the term "firearm silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

16. SULLIVAN requested that the UCE build him a functional silencer from a flashlight as described on Internet websites referenced by SULLIVAN. The FBI did so, and mailed a silencer to the address SULLIVAN provided to the UCE. The silencer was delivered on or about June 19, 2015, from outside the State of North Carolina to SULLIVAN at his address in Burke County, North Carolina. Having been built in accordance with SULLIVAN's instructions, the silencer did not bear the required serial number and was not registered to SULLIVAN or any other person in the NFRTR.

17. SULLIVAN took control and possession of the silencer from his mother who picked up the mail. SULLIVAN hid the silencer in the crawl space of his home with his stolen .22 Marlin, black ski mask and lock pick kit. SULLIVAN intended to use the silencer to carry out terrorist acts on behalf of ISIL.

## SULLIVAN's Use of Interstate Commerce Facilities in the Commission of an Attempted Murder-For-Hire:

18. On or about June 19, 2015, SULLIVAN's mother and father questioned him about the nature and purpose of the silencer, which SULLIVAN's mother had received in the mail. SULLIVAN, believing that his mother and father had and would interfere with his plan to commit terrorist acts in support of ISIL, offered the UCE compensation, to wit: money or other items of pecuniary value, to kill his parents.

19. SULLIVAN's communications with the UCE used a facility in interstate commerce: to wit, a social media application which he used to communicate with the UCE over the Internet from the State of North Carolina to the UCE's location in another State.

## SULLIVAN's False Statements to Federal Agents

20. On or about June 19, 2015, SULLIVAN was interviewed by agents of the Federal Bureau of Investigation (FBI) in Morganton, North Carolina. SULLIVAN was advised of his rights, waived his right to have an attorney present and agreed to provide truthful answers to the agents' questions.

    a. During this interview, SULLIVAN was asked, "Do you have a rifle?" SULLIVAN replied, "No, Sir."

    b. SULLIVAN was also asked if he knew the caliber of the gun that had been used to kill "the old man" on his street, referring to Mr. Clark." SULLIVAN replied, "I don't know the caliber."

    c. The agents asked SULLIVAN, "[Y]ou didn't kill that old man (referring to Mr. Clark)?" SULLIVAN replied, "No Sir."

21. On June 20, 2015, SULLIVAN was interviewed again by agents of the FBI in Buncombe County, North Carolina. SULLIVAN was advised of his rights, waived his right to have an attorney present and agreed to provide truthful answers to the agents' questions.

    a. On this occasion, SULLIVAN was informed that agents had searched his home and seized certain items of evidence. In response, SULLIVAN admitted that he had lied to the agents the day before and described where he had hidden the .22 Marlin that he had stolen from his father's gun cabinet.

b. The agents asked SULLIVAN again if he had "any information about [who killed Mr. Clark]." SULLIVAN replied, "I have no information."

22. SULLIVAN then well knew his statements above regarding his possession of a stolen rifle and knowledge of the circumstances of Mr. Clark's death were false in that he used the .22 Marlin hidden under his house to murder Mr. Clark by shooting him through the head.

23. The circumstances surrounding planned acts of terrorism and the possession and use of stolen firearms within the United States and involving U.S. citizens are matters within the jurisdiction of the FBI and the executive branch of the United States Government.

# COUNT ONE

**Violation**: 18 U.S.C. § 2339B(a)(1)
(Attempted Material Support of a Designated Foreign Terrorist Organization)

24. Paragraphs 1 through 23 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

25. Beginning on or about June 6, 2015, and continuing until on or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere,

### (1) JUSTIN NOJAN SULLIVAN,
a/k/a "TheMujahid,"

defendant herein, did knowingly attempt to provide material support or resources, as that term is defined in Title 18, United States Code, Section 2339A(b), to wit: himself and others as personnel, and services, to the Islamic State of Iraq and the Levant, a designated Foreign Terrorist Organization, knowing that the organization was a designated Foreign Terrorist Organization, and that the organization had engaged in and was engaging in terrorism and terrorist activity.

All in violation of Title 18, United States Code, Section 2339(B)(a)(1).

## COUNT TWO

> **Violation**: 18 U.S.C. § 924(b) (Receipt of a Silencer in Interstate Commerce with Intent to Commit a Felony)

26. Paragraphs 1 through 17 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

27. On or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere,

> **(1) JUSTIN NOJAN SULLIVAN,**
> a/k/a "TheMujahid,"

defendant herein, did knowingly receive a firearm: to wit, a firearm silencer; that had been shipped and transported in interstate commerce, intending to commit therewith an offense punishable by imprisonment for a term exceeding one year, that is providing and attempting to provide material support or resources to a designated foreign terrorist organization in violation of Title 18, United States Code, Section 2339B(a)(1).

All in violation of Title 18, United States Code, Section 924(b).

## COUNT THREE

> **Violation**: 26 U.S.C. § 5861(d) (Receipt and possession of an Unregistered Firearm)

28. Paragraphs 1 through 17 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

29. On or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere,

> **(1) JUSTIN NOJAN SULLIVAN,**
> a/k/a "TheMujahid,"

defendant herein, did knowingly receive and possess a firearm: to wit, a firearm silencer; not registered to him in the NFRTR.

All in violation of Title 26, United States Code, Section 5861(d).

## COUNT FOUR

**Violation**: 18 U.S.C. §§ 922(j), 924(a)(2)
(Possession of a Stolen Firearm)

30. Paragraphs 6, 20 through 23 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

31. Beginning no later than on or about December 17, 2014, and continuing until on or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere,

**(1) JUSTIN NOJAN SULLIVAN,**
a/k/a "TheMujahid,"

defendant herein, knowingly possessed a stolen firearm, that is, the .22 Marlin, which had been shipped and transported in interstate commerce.

All in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2).

## COUNT FIVE

**Violation**: 18 U.S.C. § 1958 (Use of Interstate Facilities in the Attempted Commission of a Murder-For-Hire)

32. Paragraphs 5, 18 and 19 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

33. On or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere,

**(1) JUSTIN NOJAN SULLIVAN,**
a/k/a "TheMujahid,"

defendant herein, used a facility in interstate commerce, to wit, a social media application operating via the Internet, with the intent that the murder of his mother and father with whom he lived be committed in violation of the laws of the State of North Carolina, and as consideration promised and agreed to pay, things of pecuniary value.

All in violation of Title 18, United States Code, Section 1958.

## COUNT SIX

> **Violation**: 18 U.S.C. § 1001(a)(2) (False Statement to an Agency of the United States)

34. Paragraphs 6, 20 through 23 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

35. On or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere,

> **(1) JUSTIN NOJAN SULLIVAN,**
> a/k/a "TheMujahid,"

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by falsely stating to federal agents then investigating a matter involving international terrorism that (a) he did not have a rifle, (b) did not know the caliber of the gun that had been used to kill "the old man" on his street, referring to Mr. Clark; and (c) that he "didn't kill that old man," referring to Mr. Clark. The statements were false because, as SULLIVAN then and there knew he had used the .22 Marlin to murder his neighbor, Mr. Clark.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT SEVEN

> **Violation**: 18 U.S.C. § 1001(a)(2) (False Statement to an Agency of the United States)

36. Paragraphs 6, 20 through 23 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

37. On or about June 20, 2015, in Buncombe County, within the Western District of North Carolina, and elsewhere,

> **(1) JUSTIN NOJAN SULLIVAN,**
> a/k/a "TheMujahid,"

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by falsely stating to federal agents then investigating a matter involving international terrorism that he had "no information" about who killed Mr. Clark. This statement was false because, as SULLIVAN then and there knew he had used the .22 Marlin to murder his neighbor, Mr. Clark.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT EIGHT

**Violation:** 18 U.S.C. § 2332b(a)(1) and (2)
(Conspiracy to Commit an Act of Terrorism Transcending National Boundaries)

38. Paragraphs 1-23 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

39. Beginning no later than June 6, 2015, and continuing until on or about June 19, 2015, in Burke County, within the Western District of North Carolina, and elsewhere, involving:

    a. conduct transcending national boundaries and

    b. a facility of interstate and foreign commerce used in furtherance of offense(s) and offenses, which, if consummated, would have obstructed, delayed, or affected interstate and foreign commerce,

**(1) JUSTIN NOJAN SULLIVAN,**
a/k/a "The Mujahid,"

defendant herein, did knowingly and intentionally conspire with Junaid Hussain, and others known and unknown to the grand jury, to kill, maim, and assault one or more persons within the United States, in violation of North Carolina General Statutes, Sections 14-17 and 14-32, and Virginia Code, Sections 18.2-31 and 18.2-51.2.

40. In furtherance of the conspiracy, and to effect the objectives thereof, the defendant, together with others, knowingly committed and caused to be committed, among others, the following:

## OVERT ACTS

a. On a date not later than June 7, 2015, Sullivan conducted research on the type of weapon and ammunition that he would use in the targeted killings and mass shootings, including an AR-15 assault rifle with a firearm silencer, and .223 split core ammunition.

b. On or about June 7, 2015, Sullivan attempted to recruit the UCE to join ISIL and participate in planned targeted killings and mass shootings to be conducted on behalf of ISIL.

c. On a date not later than June 7, 2015, Sullivan conducted research about the locations of upcoming gun shows, in North Carolina and Virginia, where he and the UCE could purchase AR-15 assault rifles.

d. On or about June 9, 2015, Sullivan discussed making a video for "IS" and told the UCE that he had spoken to someone on the "cyber team" for IS.

e. On or about June 10, 2015, Sullivan told the UCE that "a hacker from IS might be able to help" in planning a terrorist attack in the United States.

f. On or about June 17, 2015, Sullivan attempted to purchase hollow point ammunition from a local gun dealer to be used with the weapon(s) he intended to purchase.

g. On or about June 19, 2015, Sullivan sent the UCE a coupon for reduced admission to a gun show in Virginia.

h. On a date not later than June 19, 2015, Sullivan obtained the funds necessary to purchase the AR-15 assault rifle and ammunition.

i. On June 19, 2015, Sullivan exchanged communications with Junaid Hussain on a social media application in which they discussed making a video of a terrorist attack in the United States for later use by ISIL.

All in violation of Title 18, United States Code, Section 2332b(a)(1) and (2).

## COUNT NINE

**Violation:** 18 U.S.C. § 2332b(a)(1) and (2)
(Attempt to Commit an Act of Terrorism Transcending National Boundaries)

41. Paragraphs 1-23 of the Introduction of this Superseding Bill of Indictment are re-alleged and incorporated herein.

42. Beginning no later than June 6, 2015, and continuing until on or about June 19, 2015, in Burke County, within the Western District of North Carolina and elsewhere, involving:

    a. conduct transcending national boundaries and

    b. a facility of interstate and foreign commerce used in furtherance of offense(s), and offenses, which, if consummated, would have obstructed, delayed, or affected interstate and foreign commerce,

**(1) JUSTIN NOJAN SULLIVAN,**
a/k/a "The Mujahid,"

defendant herein, did knowingly and intentionally attempt to kill, maim, and assault one or more persons within the United States, in violation of North Carolina General Statutes, Sections 4-17 and 14-32, and Virginia Code, Sections 18.2-31 and 18.2-51.2.

All in violation of Title 18, United States Code, Section 2332b(a)(1) and (2).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

43. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given of 18 U.S.C. § 924 and 28 U.S.C. § 2461(c). The following property is subject to forfeiture in accordance with Section 924 and/or Section 2461(c):

    a. One Casio Model GzOne Commander wireless telephone,

    b. One Toshiba Laptop, L855-S5121, serial number 4D062975Q,

    c. One Toshiba Laptop, serial number 5D115194Q,

d. Black ski mask,

   e. Lock pick kit and tools,

   f. One Marlin .22 rifle, Model 60W, serial number 07376285,

   g. One handwritten journal,

   h. $689 in U.S. currency; and

   i. 18 books relating to warfare and weapons.

44. From his engagement in the violations alleged in Count One of this Indictment, punishable by imprisonment for more than one year, the defendant SULLIVAN shall forfeit to the United States of America, pursuant to:

   a. Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s); pursuant to Title 18, United States Code, Section 981(a)(1)(G)(iii) and Title 28, United States Code, Section 2461(c) all assets, foreign or domestic derived from, involved in, or used or intended to be used to commit any act of domestic or international terrorism against the United States, citizens or residents of the United States, or their property; and

   b. Title 18, United States Code, Section 924(d)(1), any firearm or ammunition involved in any knowing violation of Title 18, United States Code, Section 922(j).

45. The Grand Jury finds probable cause to believe that the property described above is subject to forfeiture on one or more of the grounds stated above.

A TRUE BILL:

FOREPERSON

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

Michael E. Savage
Assistant United States Attorney
Western District of North Carolina

Gregory R. Gonzalez
Trial Attorney
National Security Division